UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

JAHMIL O. BARRETT,

       Plaintiff,

  v.

LOCAL 804 UNION and UNITED PARCEL
SERVICE, INC. (UPS),

       Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-2046 (MKB)

MARGO K. BRODIE, United States District Judge:

  Plaintiff Jahmil O. Barrett, proceeding *pro se*, commenced the above-captioned action on April 4, 2018 against the Local 804 Union (the "Local 804"), individual Local 804 Defendants Eddie Villalta, Anthony Cirulli, and Joe Forcelli, United Parcel Service, Inc. ("UPS"), individual UPS Defendants Matt Hoffman, Doug Blunt, and Chris Travaglia, and International Brotherhood of Teamsters ("IBT"), pursuant to section 8 of the National Labor Relations Act, 29 U.S.C. § 151 *et. seq.*, ("NLRA"), section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), 42 U.S.C. § 1983, the applicable collective bargaining agreements, and section 10 of the Federal Arbitration Act, 9 U.S.C. § 10(a)(1) (the "FAA"). Plaintiff alleges unlawful discharge and unfair labor practices, as well as a violation of section 1001 of the federal criminal laws, 18 U.S.C. § 1001(a), and a state law fraud claim. (Compl., Docket Entry No. 1.) Plaintiff amended his Complaint three times, each time asserting almost identical claims.[1] (Am. Compl.,

---

[1] Plaintiff did not replead the section 1983 claim or FAA claim in the Third Amended Complaint ("TAC"), which is the operative complaint. (*See generally* TAC.) Nor did Plaintiff reassert claims against the individual Defendants or IBT. In addition, by letter dated December 19, 2018, Plaintiff notified the Court that he does not object to dismissal of the fraud and

Docket Entry No. 6; Second Am. Compl. ("SAC"), Docket Entry No. 24; Third Am. Compl. ("TAC"), Docket Entry No. 44.)

Currently before the Court are separate motions to dismiss the TAC by UPS and Local 804, for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, both of which are opposed by Plaintiff.[2]  For the reasons set forth below, the Court denies Defendants' motions to dismiss.

**I. Background**

The Court assumes the truth of the factual allegations in the TAC for the purposes of this Memorandum and Order.  In light of Plaintiff's *pro se* status, the Court also considers and assumes the truth of the factual allegations in Plaintiff's opposition.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (finding that district courts may consider factual allegations made by a *pro se* party in his papers opposing a motion to dismiss).

Plaintiff was an employee of UPS and a member of Local 804, a chapter of the IBT. (TAC 3.)  Plaintiff does not allege when he was hired by UPS, but alleges that on or about "October 13, 2010, [he] was injured in the line of duty at his workplace and placed on workman's compensation."  (*Id.*)  Plaintiff received letters on or about March 30, 2011, May 9, 2011, and July 5, 2011, "from Defendants 6 [UPS], and 7 [Matt Hoffman, UPS Labor

---

conspiracy claims against Defendants.  (Pl. Letter dated Dec. 18, 2018, 1, Docket Entry No. 56.) Accordingly, on consent of the parties, the Court grants Defendants' motions to dismiss Plaintiff's section 1001(a) claim and state law fraud claim.

[2]  (UPS Mot. to Dismiss ("UPS Mot."), Docket Entry No. 51; UPS Mem. of Law in Supp. of UPS Mot. ("UPS Mem."), Docket Entry No. 51-1; Local 804 Mot. to Dismiss ("Local 804 Mot."), Docket Entry No. 52; Local 804 Mem. of Law in Supp. of Local 804 Mot. ("Local 804 Mem."), Docket Entry No. 52-1; Pl. Opp'n to Local 804 Mot. and UPS Mot. ("Pl. Opp'n"), Docket Entry No. 50.)

Manager],"[3] directing Plaintiff to provide a letter from his physician regarding the injury that Plaintiff had sustained on or about October 13, 2010. (*Id*.) Plaintiff provided UPS with medical documentation on March 17, 2011 and May 10, 2011 "to update them on his medical progress." (*Id*. at 4.) On or about July 12, 2011, Plaintiff provided "Defendant 9 [Chris Travaglia, UPS Building Manager]" with a letter from Plaintiff's physician in the presence of "Defendant 8 [Doug Blunt, UPS Supervisor]."[4] (*Id*.)

Plaintiff's worker's compensation terminated on May 18, 2011 and UPS terminated his employment on July 13, 2011. (*Id*. at 3–4.) Plaintiff contends that his discharge was "in violation of Article 12, Sections 1 & 2, of the Collective Bargaining Agreement (CBA)[5] for

---

[3] Plaintiff does not identify Defendants 6 and 7 and the TAC only includes Local 804 and UPS in the caption. (TAC.) However, the Court understands Plaintiff to refer to the defendants listed in the SAC. (SAC 2–3.) The SAC lists UPS as "Defendant No. 6" and Matt Hoffman, UPS Labor Manager, as "Defendant No. 7." (*Id*. at 3–4.)

[4] The SAC states that "Defendant 9" is Chris Travaglia, UPS Building Manager and "Defendant 8" is Doug Blunt, UPS Supervisor. (SAC 4.)

[5] During all relevant times, UPS and IBT were parties to a National Master Agreement ("NMA") for the time period of December 19, 2007 through July 31, 2013, to which Local 804 was also bound. (Local 804 Mem 2–3; UPS Mem. 2; NMA, annexed to Serge Ambroise Decl. in Supp. of Local 804 Mot. to Dismiss the SAC ("SAC Ambroise Decl.") as Ex. 3, Docket Entry No. 36-5.) UPS and Local 804 were also parties to a local supplemental agreement to the NMA for the time period from December 19, 2007 through July 31, 2013 ("Supplemental Agreement"). (Local 804 Mem. 3; UPS Mem. 2; Suppl. Agreement, annexed to SAC Ambroise Decl. as Ex. 4, Docket Entry No. 36-6.) Plaintiff's employment was covered by the NMA and the Supplemental Agreement. (Local 804 Mem. 3; UPS Mem. 2.) Although Plaintiff does not attach the NMA or Supplemental Agreement to his TAC and Local 804 does not attach the NMA or Supplemental Agreement as an exhibit to their motion to dismiss the TAC, both documents are attached to Local 804's prior motion to dismiss the SAC. Because Plaintiff explicitly refers to and relies on the provisions of the NMA and Supplemental Agreement in the TAC and does not dispute the accuracy or applicability of either agreement, the Court relies on these agreements in deciding Defendants' motions as they are incorporated by reference into the TAC. (*See generally* TAC); *see also Naughton v. Local 804 Union*, No. 18-CV-2830, 2019 WL 1003054, at *6 (E.D.N.Y. Mar. 1, 2019) (incorporating by reference a collective bargaining agreement because Plaintiff explicitly referred to and relied upon the agreement in his amended

3

unknown reason(s) and in violation of the [LMRA]; Section 301 Title 29 (U.S.C. § 185)." (*Id*. at 4.) Plaintiff alleges that he "never received an official notice of discharge as required by the (CBA)." (*Id*.)

In or about July of 2011, Plaintiff "submitted his grievance form to Local Union 804's representative Anthony Cirulli" and "made numerous telephone calls to Local Union 804's representatives without success." (*Id*. at 5; Pl. Opp'n 2.) From on or about July 20, 2011 to in or about October of 2017, Plaintiff made several telephone calls to Local 804 to inquire as to his grievance and was told that he had to wait until his "arbitration date."[6] (TAC 5.)

On or about October 11, 2017, Plaintiff "received a flyer regarding unfair labor practices"[7] and made several additional telephone calls to Local 804's representatives until January of 2018 when he "realized that Local Union 804[] had no intentions [of] processing . . . Plaintiffs grievance." (*Id*.)

On or about February 9, 2018, Plaintiff filed an unfair labor practice charge with the NLRB against Local 804 for breaching its duty of fair representation. (*Id*.)

---

complaint); *Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 376–77 (E.D.N.Y 2011) (incorporating by reference a collective bargaining agreement because the plaintiff specifically identified the agreement in the complaint and did not dispute the accuracy or applicability of the agreement which was attached to the defendant's affirmation).

    Article 12, section 1 of the Supplemental Agreement provides in pertinent part that "drinking, or proven or admitted dishonesty" "shall be causes for immediate suspension or discharge of an employee." (Suppl. Agreement 32.) Article 12, section 2 provides in pertinent part that "[i]n all other cases involving the discharge or suspension of an employee, the Company will give three (3) working days' notice to the employee of the discharge or suspension and the reason therefore." (*Id*.)

    [6] Plaintiff does not specify how frequently he called Local 804.

    [7] Plaintiff does not provide any details regarding the flyer.

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Plaintiff's breach of duty of fair representation and hybrid section 301/breach of duty of fair representation claims

The Court liberally construes the TAC as alleging two claims: (1) a claim for breach of the duty of fair representation under the NLRA; and (2) a hybrid section 301/breach of duty of fair representation claim under the LMRA. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (*per curiam*) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (alteration and internal quotation marks omitted) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007))). The Court considers both claims together.

Plaintiff alleges that Local 804 failed to perform its duty of fair representation and that UPS breached the NMA and the Supplemental Agreement. (*See generally* TAC.)

Defendants argue that Plaintiff's duty of fair representation and hybrid section 301/fair representation claims are barred by the applicable statute of limitations, and, in any event, are not sufficiently alleged. (Local 804 Mem. 6–7; UPS Mem. 6–7.)

#### i. Timeliness of Plaintiff's claims

"A duty of fair representation claim has a six-months' limitations period, and a 'cause of action accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained.'" *Scerba v. Allied Pilots Ass'n*, 589 F. App'x 554, 556 (2d Cir. 2014) (quoting *Cohen v. Flushing Hosp. and Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995)); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) ("The six-month clock begins to run from the time when the union member knew or reasonably should have known that a breach of the duty of fair representation had occurred." (internal quotation marks and citation omitted)). Hybrid claims, which are claims against an employer and a union, are also subject to

a six-month statute of limitations. *See Staten v. Patrolmen's Benevolent Assoc'n of City of N.Y., Inc.*, 736 F. App'x 17, 18 (2d Cir. 2018) ("There is a six-month statute of limitations for duty of fair representation claims."); *McLeod*, 995 F. Supp. 2d 134, 142 (E.D.N.Y. 2014) ("[T]he appropriate statute of limitations for 'hybrid' actions, i.e., cases involving both claims against the employer under [s]ection 301 and claims against the union for breach of the duty of fair representation, is six months."); *Martinez v. Caravan Transp., Inc.*, 253 F. Supp. 2d 403, 408 (E.D.N.Y. 2003) (same). "Concealing the actionability of a known injury is sufficient to toll the statute of limitations." *Baskin v. Hawley*, 807 F.2d 1120, 1130 (2d Cir. 1986). However, a plaintiff's "own lack of diligence should not toll the limitations period in their favor." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 115 (2d Cir. 1997).

Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court cannot find that Plaintiff's claims are time-barred. Although the Supplemental Agreement provides that "[a]ny grievance or difference which cannot be adjusted between the parties" is to be "submitted for a binding determination upon written notice of either party to the other within ten (10) days of failure to agree," it does not specify a time period within which a grievance had to be scheduled for arbitration. (Suppl. Agreement 52–55.) While six years is a lengthy period of time, Plaintiff has alleged that he reasonably believed that Local 804 was processing his grievance through arbitration based on his numerous calls to Local 804 "between July 2011 thru October 2017" to inquire about his grievance, and the fact that he was told by Local 804 representatives each time that he would have to "wait until his [a]rbitration date." (TAC 4.) Plaintiff further alleges that it was not until January of 2018 that he "realized that [Local 804] ha[d] no intention[]" of processing the grievance. (*Id*. at 5.) Plaintiff explains that he came to this realization on or about October 11, 2017, when he "received a flyer

7

regarding unfair labor practices" and "made several more telephone calls to Local Union 804's representatives without success." (*Id*. at 5.) Based on these facts, and despite the six-year delay, Plaintiff has at least raised an issue of fact as to whether he reasonably deferred to Local 804's expertise and in good faith relied upon their representations that his grievance was being pursued and that he had to wait for an arbitration date.

Accordingly, based on the factual allegations in the TAC, the Court declines to find that Plaintiff's claims are time-barred. *See Demchik v. General Motors Corp.*, 821 F.2d 102, 103 (2d Cir. 1987) (finding that the district court improperly granted summary judgment on the basis that the plaintiff's claims were time-barred where the union failed to properly appeal his grievance and there was a material issue of fact as to whether the union fraudulently concealed its failure to file the notice of appeal for approximately three years); *King v. New York Tel. Co.*, 785 F.2d 31, 35 (2d Cir. 1986) (finding that there was a material issue of fact as to whether the plaintiff knew or should have known of the union's failure to take her case to arbitration where the union advised the plaintiff that it planned to pursue arbitration and did not inform her of the grievance denial for several months despite several inquiries made by the plaintiff); *Anderson v. Metro-North Commuter Railroad Co.*, No. 18-CV-6152, 2019 WL 1863245, at *4 (S.D.N.Y. Apr. 24, 2019) (declining to dismiss the plaintiff's claims as time-barred where the alleged breach occurred in June of 2014 and the plaintiff filed his complaint in July of 2018 because "[t]here [was] nothing in the record to indicate [the p]laintiff knew or should have known of the [u]nion's fraudulent representations regarding the status of the arbitration").

      **ii. Plaintiff plausibly alleges duty of fair representation and section 301 claims**

Plaintiff alleges that UPS terminated his employment without just cause and that Local 804 "refus[ed] to process [his] grievance regarding his wrongful discharge for arbitrary or

discriminatory reason or in bad faith."[8] (Pl. Opp. 2.)

Local 804 does not address Plaintiff's allegation that he was terminated without just cause and that it failed to process his grievance. Instead, Local 804 argues only that Plaintiff's fraud and criminal law claims fail as a matter of law. (Local 804 Mem. 8–10.)

UPS argues that, even accepting Plaintiff's allegations as true, they are insufficient to plausibly allege that Local 804 violated its duty of fair representation and, because Plaintiff does not state a duty of fair representation claim, it follows that his section 301 claim against UPS fails as a matter of law. (UPS Mem. 8–9.)

"The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir. 2016) (quoting *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974)), *cert. denied*, 137 S. Ct. 313 (2016). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes*, 790 F.3d at 388); *see also Flight Attendants in Reunion*, 813 F.3d at 473. If a plaintiff shows "that the union's actions meet this standard, the plaintiff must then

---

[8] Because Plaintiff does not provide any factual allegations supporting his claim that Local 804's actions were discriminatory, (*see generally* TAC), the Court does not address this category, *see White*, 237 F.3d at 180 n.7 (declining to address the "discriminatory" category, where "Plaintiffs did not allege that the leadership's actions were discriminatory").

9

'demonstrate a causal connection between the union's wrongful conduct and the plaintiff's injuries.'" *Pathania v. Metro. Museum of Art*, 563 F. App'x 42, 44 (2d Cir. 2014) (alteration omitted) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). Neither conclusory allegations nor "mere negligence" by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim. *Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990)).

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Air Line Pilots Ass'n*, 499 U.S. at 67); *see also Greene v. St. Barnabas Hosp.*, 727 F. App'x 21, 23 (2d Cir. 2018) (same); *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) (same). A union acts arbitrarily if it "ignores or perfunctorily presses a meritorious claim." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 16 (2d Cir. 1993); *see also Greene*, 727 F. App'x at 23 ("A union may breach its duty when it delays in processing a meritorious grievance result[ing] in prejudice to the plaintiff, such as foreclosing arbitration."); *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 284 (E.D.N.Y. Jan. 23, 2015) ("In the context of claims that a union failed to file a grievance on a member's behalf, a union 'may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion.'" (quoting *Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 412 (E.D.N.Y. 2014))). Arbitrary

conduct includes "acts of omission which, while not calculated to harm union members, may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *NLRB v. Local 282, Int'l Bhd. of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984) (internal quotation marks and citations omitted); *Clarke v. Commc'ns Workers of America*, 318 F. Supp. 2d 48, 56 (E.D.N.Y. 2004) (collecting cases). While a union member does not have the absolute right to have his grievance arbitrated, the union cannot act arbitrarily in deciding whether a grievance warrants arbitration. *See Vaca*, 386 U.S. at 177, 191.

"A union acts in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126. To plead that a union's actions were undertaken in "bad faith," the plaintiff must allege "fraudulent, deceitful, or dishonest action." *White*, 237 F.3d at 179 (quoting *Sim v. N. Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)); *see also Spellacy*, 156 F.3d at 126 ("Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct."). "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994).

A "suit, which alleges that the employer breached the [CBA] and that the union breached its duty of fair representation, is known as a hybrid [section] 301/fair representation claim." *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 682 F. App'x 42, 44 (2d Cir. 2017) (quoting *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000)). Although "[a] plaintiff may sue the union or the employer, or both, [he] must allege violations on the part of both." *White*, 237 F.3d at 179. A plaintiff must therefore "prove both (1) that the

employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *Nelson v. Local 1181-1061, Amalgamated Transit Union, AFL-CIO*, 652 F. App'x 47, 49 (2d Cir. 2016) (quoting *White*, 237 F.3d at 178).

Construing the factual allegations in Plaintiff's favor, Plaintiff suffered an injury while at work on October 13, 2010 and was placed on worker's compensation from December 1, 2010 through May 18, 2011. (TAC 3.) On March 17, 2011, May 10, 2011, and July 12, 2011, in response to the March 30, 2011, May 9, 2011, and July 5, 2011 requests from UPS, Plaintiff provided UPS with the medical documentation they requested and "update[ed] them on his medical progress."[9] (*Id*. at 4.) Despite complying with UPS's request for medical records, UPS discharged Plaintiff "for unknown reason(s)" on or about July 16, 2011. (*Id*.) Accepting these allegations as true, Plaintiff plausibly alleges that his grievance was meritorious.[10] *See Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011) (finding the plaintiff's allegations "that [the employer] suspended her employment in retaliation for her complaints to managers and supervisors about inadequate staffing and its negative impact on

---

[9] Plaintiff specifically alleges that on or about July 12, 2011, he provided medical documentation to UPS Building Manager Travaglia in the presence of UPS Supervisor Blunt. (TAC 4.)

[10] UPS contends that "Plaintiff failed to respond to the July 2011 notice within five days" and "was terminated for his absence in accordance with the CBA on July 13, 2011." (UPS Mem. 3.) Plaintiff alleges that he received UPS's letter on or about July 5, 2011 and provided Travaglia with the documents requested on or about July 12, 2011. (TAC 3–4). UPS' allegations raise a factual dispute which cannot be resolved in its favor on a motion to dismiss. *See DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003) (holding that "a disputed issue of fact . . . is inappropriate to consider in the context of a Rule 12(b)(6) motion"). In addition, even if the Court were to consider extrinsic evidence related to Plaintiff's termination, there is no document properly before the Court which explains UPS' decision to terminate Plaintiff. Nor does UPS cite to any particular provision of the NMA or Supplemental Agreement which states that employees will be terminated if they fail to respond to a request for medical records within five days.

patient care in violation of the New York Labor Law and the CBA" sufficient to show that "the [p]laintiff . . . plausibly alleged that her grievance was meritorious").

In addition, drawing all reasonable inferences in Plaintiff's favor, his allegations are sufficient at this stage to infer that Local 804 arbitrarily ignored his meritorious grievance and misled him into believing that Local 804 was arbitrating his termination.

Plaintiff reported his discharge to Local 804 on or about July 20, 2011 and subsequently called Local 804 on several occasions to determine the status of his grievance, only to be told that he had to wait for an arbitration date. (TAC 4.) After approximately six years of waiting and checking for an arbitration date, Plaintiff reasonably concluded that Local 804 had no intention of arbitrating his termination. (*Id*. at 5.) Although Plaintiff's allegations are sparse, and despite the possibility that the evidence will show otherwise, the Court finds that the allegations plausibly allege that Local 804's conduct in failing to process Plaintiff's seemingly meritorious grievance was more than mere negligence, and was potentially arbitrary. *See Canales v. ACP Facility Serv.'s, Inc.*, No. 17-CV-6937, 2019 WL 1171479, at *4 (E.D.N.Y. Mar. 13, 2019) (finding that the plaintiff sufficiently alleged that the union acted arbitrarily where it failed "to contact [the plaintiff] before outright declining to take her case to arbitration without any personalized explanation as to the basis for its decision"); *Thomas*, 793 F. Supp. 2d at 549 (denying the union's motion to dismiss where the plaintiff alleged that "she contacted [the union] on numerous occasions and the union representatives falsely represented that her grievance was being processed or that a settlement was being negotiated" because, "[i]nsofar as a 'minimal investigation' can constitute a breach of the duty of fair representation," the allegation was sufficient to plausibly allege that the union failed to investigate the grievance); *see also Passante v. New York State Nurses Ass'n*, No. 10-CV-087, 2010 WL 2425953, at *3

(N.D.N.Y. June 11, 2010) ("It is enough at this juncture that [the union] allegedly failed to meet the minimum requirements in handling [the plaintiff's] grievance and that such a failure was not a tactical decision but rather an arbitrary omission — an omission that may have involved either no decision at all or a decision made in reckless disregard of [the plaintiff's] rights."); *Moore v. Roadway Express, Inc. and Local 707*, No. 07-CV-977, 2008 WL 819049, at *5 (E.D.N.Y. Mar. 25, 2008) ("Assuming, as the court must, that plaintiff made valid complaints to his shop steward and that [the union] failed to conduct even a minimal investigation, plaintiff has stated a claim that [the union] breached its duty of fair representation by failing to investigate plaintiff's grievances.").

Accordingly, Plaintiff plausibly alleges a breach of Local 804's duty of fair representation. In addition, because Plaintiff plausibly alleges a duty of fair representation claim, and Defendants do not argue that Plaintiff fails to allege that UPS breached the NMA and Supplemental Agreement, the Court finds that Plaintiff also plausibly alleges a section 301 claim against Local 804 and UPS. The Court therefore denies Defendants' motions as to these claims.

### III. Conclusion

For the foregoing reasons, the Court denies Defendants' motions to dismiss the TAC for failure to state a claim.

Dated: June 24, 2019
      Brooklyn, New York

                                        SO ORDERED:

                                            s/ MKB
                                        MARGO K. BRODIE
                                        United States District Judge