UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

JAHMIL O. BARRETT,

                                    Plaintiff,          **MEMORANDUM & ORDER**
                                                        18-CV-2046 (MKB)
                    v.

LOCAL 804 UNION (IBT) and UNITED PARCEL
SERVICE INC.,

                                    Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Jahmil Barrett, proceeding *pro se*, commenced the above-captioned action on

April 4, 2018, against Local Union 804 ("Local 804"), the International Brotherhood of

Teamsters ("IBT"), Eddie Villalta, and United Parcel Service ("UPS"), alleging unlawful

discharge and unfair labor practices.[1]  (Compl., Docket Entry No. 1.)  On August 16, 2019,

Plaintiff filed a Fourth Amended Complaint ("FAC") solely against Local 804 and UPS,

pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185

("LMRA"), and the applicable collective bargaining agreement, alleging unlawful discharge and

unfair labor practices.  (FAC, Docket Entry No. 66.)

      Local 804 and UPS have filed separate motions for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure, and Plaintiff opposed the motions.[2]  Plaintiff

---

[1]  Plaintiff amended his Complaint on May 15, 2018, June 26, 2018, and October 19,
2018.  (Am. Compl., Docket Entry No. 6; Second Am. Compl. ("SAC"), Docket Entry No. 24;
Third Am. Compl. ("TAC"), Docket Entry No. 44.)

[2]  (Local 804 Mot. for Summ. J. ("Local 804 Mot."), Docket Entry 207; Mem. of Law in
Supp. of Local 804 Mot. ("Local 804 Mem."), Docket Entry No. 207-1; UPS Mot. for Summ. J.

cross-moved for summary judgment, and Defendants opposed Plaintiff's cross-motion.[3]  For the

reasons set forth below, the Court grants Defendants' motions for summary judgment.  The

Court denies Plaintiff's cross-motion for summary judgment.

## I.   Background

Plaintiff was an employee of UPS and a member of Local 804, a chapter of IBT.[4]  (FAC

at 3.)  Defendants are Plaintiff's former employer and union.  (*Id.*)

### a.   Factual background

#### i.   Plaintiff's employment and discharge

On July 28, 2008, UPS hired Plaintiff as a part-time pre-loader assigned to the "Foster

Avenue Facility."  (UPS' Stmt. of Undisputed Facts Pursuant to Loc. Rule 56.1 ("UPS 56.1") ¶

1, Docket Entry No. 208-2.)  On or around October 13, 2010, Plaintiff was injured on the job

when a package fell on him and, pursuant to workers' compensation, Plaintiff had to take leave.

(*Id.* ¶ 7; Pl.'s Opp'n Aff. ¶ 2.)  In March, May, and July of 2011, Plaintiff received letters from

UPS asking him to report to work or justify his absence within five days from the date of the

letter ("five-day letters").  (UPS 56.1 ¶¶ 9–10, 12; Pl.'s Response to UPS 56.1 ("Pl.'s Counter to

UPS 56.1") ¶ 10, Docket Entry No. 209-1; Five-Day Letters, annexed to UPS Mot. as Ex. J,

Docket Entry No. 208-13.)  UPS claims that it also sent Plaintiff letters in October of 2010 and

---

("UPS Mot."), Docket Entry 208; Mem. of Law in Supp. of UPS Mot. ("UPS Mem."), Docket
Entry No. 208-1; Pl.'s Opp'n to Local 804 Mot. ("Pl.'s Opp'n to Local 804"), Docket Entry No.
220; Pl.'s Opp'n to UPS Mot. ("Pl.'s Opp'n to UPS"), Docket Entry No. 209; Pl.'s Aff. in Opp'n
to UPS Mot. ("Pl.'s Opp'n Aff."), Docket Entry No. 209-2.)

[3]  (Pl's Mot. for Summ. J. ("Pl.'s Mot."), Docket Entry No. 219; UPS Opp'n to Pl.'s Mot.
("UPS Opp'n"), Docket Entry No. 224; Local 804 Opp'n to Pl.'s Mot. ("Local 804 Opp'n"),
Docket Entry No. 227.)

[4]  The facts are undisputed unless otherwise noted.

June of 2011, but Plaintiff contends that he never received those letters.  (UPS 56.1 ¶¶ 12–13; Pl.'s Counter to UPS 56.1 ¶¶ 12–13.)

On March 30, 2011, UPS sent a five-day letter and Plaintiff received and responded to the five-day letter with a letter from his doctor dated March 17, 2011, indicating that he could "return to work on a trial basis starting [on April 11, 2011]."  (UPS 56.1 ¶ 14; Pl.'s Counter to UPS 56.1 ¶ 14; Doctor's Note dated March 17, 2011, annexed to UPS Mot. as Ex. K, Docket Entry No. 208-14.)  When Plaintiff returned to work on that day, he complained that he was still experiencing pain and was sent home.  (UPS 56.1 ¶ 14.)

On May 9, 2011, UPS sent another five-day letter and Plaintiff received and responded to the five-day letter with a letter from his doctor dated May 10, 2011, indicating that he could "return to work on a trial basis starting [on May 16, 2011]."  (UPS 56.1 ¶¶ 15–16; Doctor's Note dated May 10, 2011, annexed to UPS Mot. as Ex. K, Docket Entry No. 208-14.)  Plaintiff did not return to work on May 16, 2011.  (UPS 56.1 ¶ 17.)  UPS claims that it sent Plaintiff another five-day letter on June 1, 2011, but Plaintiff claims that he did not receive any other letters from UPS until July.  (Pl.'s Counter to UPS 56.1 ¶¶ 17–18.)

On July 5, 2011, UPS sent a five-day letter to Plaintiff.  (UPS 56.1 ¶ 18.)  Plaintiff claims that he did not receive the July 5, 2011 letter until July 7 or 8, 2011 and responded on July 12, 2011.  (Pl.'s Counter to UPS 56.1 ¶ 19; Doctor's Report dated July 12, 2011, annexed to UPS Mot. as Ex. L, Docket Entry No. 208-15.)  UPS terminated Plaintiff on July 13, 2011.  (UPS 56.1 ¶ 19.)

### ii.   Grievance

Shortly after his termination, Plaintiff contacted Anthony Cerulli, a Local 804 union representative, who agreed to represent Plaintiff in grieving his termination.  (*Id.* at ¶ 20.)

Cerulli met with Dan Daly, UPS's then-Labor Relations Manager, in an attempt to challenge Plaintiff's termination.  (UPS 56.1 ¶ 21.)  When Daly refused to reinstate Plaintiff, on May 10, 2013, and again on June 6, 2013, Cerulli submitted demands for arbitration concerning Plaintiff's termination.  (*Id.* at ¶¶ 22–24; Pl.'s Counter to UPS 56.1 ¶ 22.)  UPS agreed to allow Plaintiff's grievance to be placed on the arbitration docket without challenging the grievance on timeliness grounds.  (UPS 56.1 ¶ 23.)  On June 6, 2013, the American Arbitration Association ("AAA") acknowledged receipt of the grievance demand and issued a letter indicating that the matter would be calendared for arbitration.  (*Id.* at ¶ 24.)  At this time, employees and former employees often waited several years for their arbitration proceeding.  (*Id.* at ¶ 25; Local 804's Stmt. of Undisputed Facts Pursuant to Loc. Rule 56.1 ("Local 804 56.1") ¶ 30, Docket Entry No. 207-4.)

In approximately September of 2014, Daly offered Plaintiff the opportunity to return to UPS as a part-time pre-loader with the opportunity to qualify as a full-time driver in exchange for the withdrawal of the grievance.[5]  Defendants claim that Plaintiff accepted the position, but asked for time to return to work because his license was suspended and he needed time to resolve the issue.  (UPS 56.1 ¶¶ 30–31.)  Plaintiff contends that he was only offered a position as a full-time driver.  (Pl.'s Counter to UPS 56.1 ¶ 29.)  Plaintiff claims he was unable to accept the position because his driver's license was suspended and was informed that he "would have to just wait for [his] arbitration date."  (Pl.'s Opp'n Aff. ¶ 12; Pl.'s Counter to UPS 56.1 ¶ 29.)  Cerulli also advised Plaintiff that if he wanted his job back, he should take the job that he had

---

[5]  (UPS 56.1 ¶¶ 27–29; Cerulli Dep. dated Sep. 29, 2020 ("Cerulli Dep. Day 3") 198:15–201:14, annexed to UPS Mot. as Ex. E, Docket Entry No. 208-8; Daly Dep. dated Aug. 18, 2020 ("Daly Dep.") 29:25–31:6, annexed to UPS Mot. as Ex. G, Docket Entry No. 208-10.)

negotiated. [6]  (Local 804 56.1 ¶ 37; Pl.'s Aff. dated Feb. 9, 2018 ¶ 10, annexed to Local 804's

Mot. as Ex. 4, Docket Entry No. 207-3.)  In October of 2014, Cerulli and Daly signed and

submitted a form settling and resolving Plaintiff's grievance.  (UPS 56.1 ¶ 32; Local 804 56.1

¶ 35.)  Plaintiff never returned to work at UPS and did not clear his license suspension until

2018.  (UPS 56.1 ¶ 31.)

Plaintiff called Cerulli in 2016 and 2017 asking about his arbitration proceedings and

Cerulli instructed him to call the Local 804 union hall because he was no longer a union

representative.  (*Id.* at ¶¶ 36–37; Pl.'s Opp'n Aff. ¶ 14.)  Plaintiff repeatedly called the union

hall, but his calls were not returned.  (UPS 56.1 ¶ 38; Local 804 56.1 ¶ 43.)

### iii.   Relevant provisions of the NMA and Supplemental Agreement

During the period of Plaintiff's employment, UPS and Local 804 were parties to a

National Master Agreement ("NMA") and a Supplemental Agreement to the NMA

(collectively, the "CBA").  (UPS 56.1 ¶ 4.)  With regard to discharging an employee, Article 7 of

the NMA states that "an employee to be discharged or suspended shall be allowed to remain on

the job, without loss of pay unless and until the discharge or suspension is sustained under the

grievance procedure."  (Article 7 of CBA at 19, annexed to UPS Mot. as Ex. I, Docket Entry No.

208-12.)  Article 13, Section 9 (14) of the Supplemental Agreement mandates loss of seniority

(or employment) when "[the employee] is absent without good cause and fails to notify [UPS]

provided, however, that before employment is terminated, the [UPS] will send a telegram or

---

[6]  In a sworn affidavit dated February 9, 2018, Plaintiff stated that sometime after Cerulli
presented him with the offer to return to UPS, "Cerulli told [him] . . . that he did not know the
status o[f] [Plaintiff's] arbitration, but that if [Plaintiff] wanted [his] job back [he] should take the
job [Cerulli] was offering."  (Local 804 56.1 ¶ 37; Pl.'s Aff. dated Feb. 9, 2018 ¶ 10, annexed to
Local 804's Mot. as Ex. 4, Docket Entry No. 207-3.)

certified letter return receipt requested giving the employee five days in which to report."

(Article 13 of CBA at 47–48.)

The CBA includes a comprehensive grievance procedure in Article 18 that states:

> (a) The aggrieved employee or employees shall first take the grievance up with the shop steward who in turn will take the grievance up with the supervisor in charge.  Employees shall have the shop steward present on any grievance.  Grievances must be submitted to the supervisor within ten (10) days after the occurrence of such grievance.  If a satisfactory settlement is not effected with the supervisor within one (1) working day, the employee shall submit such grievance to the Union's representative in writing.

> (b) If no satisfactory adjustment is agreed upon the matter shall, within ten (10) days after step 1, be referred in writing by an Officer of the Union to the Division Manager of [UPS] or some other Executive Officer of [UPS] with the authority to act, who shall review the alleged grievance and offer a decision in writing within two (2) working days after receipt of same.

(Article 18 of CBA at 51–52.)  If the grievance cannot be resolved, it culminates in a binding arbitration before a panel composed of representatives from UPS and Local 804 and also includes a neutral arbitrator designated by the parties to break a deadlock, if necessary.  (*Id*. at 52.)

### iv.   National Labor Relations Board ("NLRB") proceedings

On February 9, 2018, Plaintiff filed an unfair labor charge against UPS and Local 804 with the NLRB.  (UPS 56.1 ¶ 45.)  On April 30, 2018, the NLRB dismissed the portion of the charge that alleged that Local 804 refused to bargain in good faith with UPS, finding that the allegation would be more appropriately filed by an employer.  (*See* NLRB decision dated Apr. 30, 2018, annexed to UPS Mot. as Ex. S, Docket Entry No. 208-22.)  The NLRB also held its proceedings in abeyance in light of the significant overlap between Plaintiff's charge and this

pending litigation.  (*See* NLRB abeyance letter dated July 24, 2018, annexed to UPS Mot. as Ex. T, Docket Entry No. 208-23.)

       **b.   Procedural background**

On April 4, 2018, Plaintiff commenced the above-captioned action and filed the FAC on August 16, 2019, alleging unlawful discharge and unfair labor practices.  (Compl.; FAC.) Plaintiff alleges that Local 804 breached its "duty to fairly represent" him by "failing to process" his grievance, in violation of the CBA, section 301 of the LMRA, and section 8 of the NLRA. (FAC 3, 6.)  Plaintiff also alleges that UPS discharged him without just cause in violation of Articles 7 and 12 of the CBA.  (*Id*. at 6.)

On December 10 and 11, 2018, Defendants moved to dismiss Plaintiff's Third Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (UPS Mot. to Dismiss, Docket Entry No. 51; Local 804 Mot. to Dismiss, Docket Entry 52.)  On June 24, 2019, the Court denied Defendants' motions to dismiss (the "June 2019 Order").  (Mem. and Order dated June 24, 2019, Docket Entry No. 60.)  The Court declined to find as a matter of law that Plaintiff's claims were time-barred because Plaintiff raised an issue of fact as to whether he reasonably deferred to Local 804's expertise and in good faith relied upon their representations that his grievance was being pursued and that he had to wait for an arbitration date.  (*Id*. at 8.)  In addition, the Court found that Plaintiff plausibly alleged a duty of fair representation and section 301 claims against Local 804 and UPS.  (*Id*. at 8–14.)

On April 1, 2021, Local 804 and UPS filed separate motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing that Plaintiff's claims are time-barred and fail as a matter of law because Plaintiff failed to respond to the five-day letters

and Local 804 rightfully discharged its duty of fair representation in September of 2014 when it

secured Plaintiff a settlement offer by which Plaintiff could have returned to UPS.  (UPS Mem.

1–2; Local 804 Mem. 1, 5.)  On April 8, 2021, Plaintiff cross-moved for summary judgment

arguing that "Local 804 intentionally and with malice and bad intent arbitrarily refused to

proceed with [his] grievance," (Pl.'s Mot. ¶ 20), and that he replied to UPS's five-day letters

therefore, there was no evidence justifying his termination, (*id.* at ¶¶ 18–19).

## II.    Discussion

### a.    Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Borley v.*

*United States*, 22 F.4th 75, 78 (2d Cir. 2021); *Windward Bora, LLC v. Wilmington Sav. Fund*

*Soc'y*, 982 F.3d 139, 142 (2d Cir. 2020).  The court must "constru[e] the evidence in the light

most favorable to the non-moving party" and "resolve all ambiguities and draw all permissible

factual inferences in favor of the party against whom summary judgment is sought."  *Lenzi v.*

*Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football*

*League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532,

534 (2d Cir. 2006)).  The role of the court "is not to resolve disputed questions of fact but only to

determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of*

*Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d

537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50

(1986).  A genuine issue of fact exists when there is sufficient "evidence on which the jury

could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.  The "mere

existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The

court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

In reviewing a motion for summary judgment involving a *pro se* litigant, "special solicitude should be afforded." *Gachette v. Metro N.-High Bridge*, 722 F. App'x 17, 19 (2d Cir. 2018) (alteration omitted) (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)); *see also Essani v. Earley*, No. 13-CV-3424, 2021 WL 1579671, at *4 (E.D.N.Y. Apr. 22, 2021) (quoting *Graham*, 848 F.2d at 344). The court must "read his pleadings 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). However, this "does not relieve [the *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* (quoting *Jorgensen v. Epic/Sony Recs.*, No. 00-CV-9181, 2002 WL 31119377, at *1 (S.D.N.Y. Sept. 24, 2002)).

**b.   Duty of fair representation and hybrid section 301/breach of duty of fair representation claims**

Although Defendants argue that Plaintiff's claims are time-barred, the Court assumes, without deciding, that Plaintiff's claims are timely and addresses the merits of Plaintiff's claims. Defendants argue that they are entitled to summary judgment based on the merits of Plaintiff's claims because "Local 804 duly represented Plaintiff, following each of the necessary steps from initiating representation to lodging a grievance and, ultimately, securing a favorable settlement of the matter" and UPS terminated Plaintiff in accordance with the CBA. (UPS Mem. 19–24; Local 804 Mem. 14–19.) Local Union 804 asserts that it had no duty to keep Plaintiff informed of the status of the grievance and its settlement of the grievance did not prejudice Plaintiff. (Local 804 Mem. 14, 17.) UPS argues that: (1) "Local 804 exerted every effort to favorably resolve

9

Plaintiff's grievance, even offering him the ability to return to work as a pre-loader while he resolved the suspension on his driver's license so that he could qualify for the [full-time driver] position . . . . [but] Plaintiff never returned to work, abandoning his job . . ." (UPS Mem. 21); (2) even if Plaintiff can succeed against Local 804 demonstrating a breach of the duty of fair representation, Plaintiff cannot demonstrate UPS breached the CBA because Plaintiff's loss of seniority and termination fell squarely within the terms of the CBA, (*id*. at 24); and (3) while Plaintiff was on worker's compensation, he failed to reply to UPS's letters directing him to report to work or justify his absence within five days, (*id*. at 23–24).

Plaintiff contends that he is entitled to summary judgment because Local 804 "intentionally and with malice and bad intent arbitrarily refused to proceed with [his] grievance." (Pl.'s Mot. ¶ 20.)  In support, Plaintiff argues that he informed Cerulli that he could not accept the full-time position as a driver because his driver's license was suspended, and Cerulli informed him that he would have to wait for arbitration for further relief.  (*Id*. at ¶¶ 12, 25.) Later, when Plaintiff attempted to follow up on the status of his grievance, union representatives never followed up or investigated the circumstances surrounding Plaintiff's discharge.  (*Id.* at ¶ 23.)  In addition, Plaintiff asserts that he is entitled to summary judgment against UPS because there is no evidence that he committed a cardinal infraction, violation of UPS's policies, or did not respond to UPS's five-day letters to justify his discharge.  (Pl.'s Opp'n to UPS Mot. ¶¶ 7–11, Docket Entry No. 209.)  Plaintiff asserts that he "should have been afforded the opportunity to stay on [his] job with pay until [his] arbitration date." (Pl.'s Mot. ¶ 11 (citing Article 7 of CBA).)

The Court will address Plaintiff's fair representation and hybrid claims in turn.

### i.   Duty of fair representation claim against Local 804

"The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir. 2016) (quoting *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974)), *cert. denied*, 137 S. Ct. 313 (2016). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes*, 790 F.3d at 388); *see also Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021); *Flight Attendants in Reunion*, 813 F.3d at 473–75. "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). Neither conclusory allegations nor "mere negligence" by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim. *Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990)).

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010)

11

(quoting *O'Neill*, 499 U.S. at 67); *Greene v. St. Barnabas Hosp.*, 727 F. App'x 21, 23 (2d Cir. 2018) (same); *see In re AMR Corp.*, 610 B.R. 434, 445 (S.D.N.Y. 2019) ("Mere 'tactical errors' and 'even negligence' do not suffice for arbitrariness." (quoting *Vaughn*, 604 F.3d at 709)), *aff'd*, 834 F. App'x 660 (2d Cir. 2021). A union also acts arbitrarily if it "ignores or perfunctorily presses a meritorious claim." *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 16 (2d Cir. 1993); *see also Greene*, 727 F. App'x at 23 ("A union may breach its duty when it delays in processing a meritorious grievance result[ing] in prejudice to the plaintiff, such as foreclosing arbitration." (citing *Young v. United States Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990))). Arbitrary conduct includes "acts of omission which, while not calculated to harm union members, may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *NLRB v. Loc. 282, Int'l Bhd. of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984) (internal quotation marks and citations omitted); *Clarke v. Commc'ns Workers of Am.*, 318 F. Supp. 2d 48, 56 (E.D.N.Y. 2004) (collecting cases). While a union member does not have the absolute right to have his grievance arbitrated, the union cannot act arbitrarily in deciding whether a grievance warrants arbitration. *See Vaca*, 386 U.S. at 177, 191.

Bad faith requires a showing that an act was "fraudulent, deceitful or dishonest." *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001). "A union acts in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy v. Airline Pilots Assoc. Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). The Second Circuit has held that active concealment by a union official may constitute "bad faith." *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1142–43 (2d Cir. 1994). An active concealment claim must involve an "unambiguous contractual entitlement" and "evidence that a union 'misled [the] employee[]' or acted with 'improper motive.'" *Bejjani*

*v. Manhattan Sheraton Corp.*, No. 12-CV-6618, 2013 WL 3237845, at *9 (S.D.N.Y. June 27, 2013) (first quoting *Spellacy*, 156 F.3d at 129; and then quoting *Acosta v. Potter*, 410 F. Supp. 2d 298, 312 (S.D.N.Y 2006)), *aff'd*, 567 F. App'x 60 (2d Cir. 2014).  "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994).

Based on the evidence in the record, Local 804's actions were neither arbitrary nor in bad faith.  Cerulli submitted demands for arbitration on May 10, 2013 and again on June 6, 2013. (UPS 56.1 ¶ 24; Pl.'s Counter to UPS 56.1 ¶ 22.)  UPS agreed to allow Plaintiff's arbitration of his grievance to proceed, and the AAA acknowledged receipt of the grievance.  (UPS 56.1 ¶¶ 23–24.)  As Plaintiff waited for his arbitration date, Cerulli continued to contact Daly to discuss the possibility of settling Plaintiff's grievance.  (UPS 56.1 ¶ 26.)  It is undisputed that through Cerulli's negotiations, UPS offered Plaintiff an opportunity to return to UPS for a full-time position that had a higher seniority status than Plaintiff's previous occupation.  (UPS 56.1 ¶¶ 27–29; Pl.'s Counter to UPS 56.1 ¶ 29; Pl.'s Opp'n Aff. ¶ 12.)  The parties disagree, however, about what happened after Defendants offered Plaintiff this position.  Plaintiff asserts that he rejected the offer because his driver's license was suspended, (Pl.'s Counter to UPS 56.1 ¶ 29; Pl.'s Opp'n Aff. ¶ 12), and that after he rejected the offer, Cerulli told him that he would have to "wait for [his] arbitration date" to seek further relief, (Pl.'s Opp'n Aff. ¶¶ 12, 14).  Based on Cerulli's representations, Plaintiff believed his grievance and arbitration were still pending and he repeatedly called Local 804 to receive updates on the status of his arbitration, but never received a call back.  (UPS 56.1 ¶¶ 36–38; Local 804 56.1 ¶ 43.)  In contrast, Defendants

contend that Plaintiff accepted the position but asked for time to return to work because he needed time to resolve the issue with his license, and Cerulli instructed Plaintiff that he could work part-time for UPS until his license suspension had been lifted.[7]  (UPS 56.1 ¶¶ 30–31.) Cerulli and Daly then settled Plaintiff's grievance and Plaintiff never returned to work.  (*Id.* at ¶¶ 30–32; Local 804 56.1 ¶ 35.)

Local 804's actions were not "so far outside a wide range of reasonableness as to be irrational." *Vaughn*, 604 F.3d at 709 (quoting *O'Neill*, 499 U.S. at 67).  Local 804 did not ignore Plaintiff's meritorious claim, rather, it investigated the underlying facts of Plaintiff's grievance and determined that he "did not have a great case going into arbitration or panel" because he failed to respond to UPS's five-day letters while on leave.  *See Samuels*, 992 F.2d at 16; *Bacchus v. New York City Dep't of Educ.*, 137 F. Supp. 3d 214, 250 (E.D.N.Y. 2015) ("[S]o long as the union's action 'is based on a reasoned decision,' it will not be found arbitrary." (quoting *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1226 (E.D.N.Y. 1990))).  (Cerulli Dep. Day 1 154:8-155:7.)  Local 804 nevertheless negotiated a favorable settlement on Plaintiff's behalf. (UPS 56.1 ¶¶ 27–29; Pl.'s Counter to UPS 56.1 ¶ 29; Pl.'s Opp'n Aff. ¶ 12.)  Plaintiff was not entitled to a particular resolution of his grievance and Local 804 was well within its discretion to approve of the settlement and to withdraw the grievance.  *See Canady v. Union 1199*, 253 F. Supp. 3d 547, 556 (W.D.N.Y. 2017) (finding that the union's settlement "that benefitted plaintiff was, as a matter of law, within the 'wide range of reasonableness' that is permitted to unions in resolving labor disputes" even though the plaintiff then complained that the union should not have settled the grievance but instead proceeded to arbitration (quoting *Desmond v. Retail Clothing Salesmen's Union Loc. 340*, No. 88-CV-6514, 1991 WL 190586, at *6 (S.D.N.Y. Sept.

---

[7]  This agreement was not memorialized in writing.  (*See* Daly Dep. 31:7–18.)

14

17, 1991))), *aff'd sub nom. Canady v. Univ. of Rochester*, 736 F. App'x 259 (2d Cir. 2018);

*Tomney v. Int'l Ctr. for Disabled*, 357 F. Supp. 2d 721, 737 (S.D.N.Y. 2005) ("A union has

'broad discretion in its decision whether and how to pursue an employee's grievance against an

employer.'" (quoting *Chauffeurs Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558,

567–68 (1990))); *Desmond*, 1991 WL 190586, at *6 (recognizing that where union's decision to

enter into a settlement agreement was within a wide range of reasonableness and that the union

did not breach its duty of fair representation as a matter of law, even if plaintiff disapproved of

the settlement).

      In addition, because Cerulli's actions were based on "reasoned decisions" and Cerulli

consulted with Plaintiff before settling the grievance — including advising him that it was in his

best interest to accept the offer to return to UPS — Local 804 did not have an obligation to

maintain communication with Plaintiff after it settled his grievance.  *See Caputo*, 730 F. Supp. at

1226, 1230–33 (recognizing that "[a] union's good faith act or omission is beyond the reach of

the judiciary if and only if that action is based on a reasoned decision," and finding that the union

did not breach its duty of fair representation by failing to keep the grievant apprised of the status

of his grievance where there were "numerous telephone communications" prior to the settlement

of the plaintiff's grievance); *Cover v. Am. Postal Workers Union, AFL-CIO*, No. 05-CV-2430,

2006 WL 8441397 at *7 (S.D.N.Y. July 21, 2006) ("A union does not act unfairly when [it] fails

to consult with or advise a grievant of its bargaining activities, nor in the legitimate exercise of

its discretion, need it obtain the employee's consent before settling a grievance." (citing *Caputo*,

730 F. Supp. at 1230)); *see also Guerrero v. Soft Drink & Brewery Workers Union*, No.

15-CV-911, 2016 WL 631296, at *4 (S.D.N.Y. Feb. 16, 2016) ("As long as the union acts in

good faith, the courts cannot intercede on behalf of employees who may be prejudiced by

rationally founded decisions which operate to their particular disadvantage." (quoting *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43-44 (2d Cir. 1994))); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 405 (S.D.N.Y. 2000) (recognizing that the "failure of the union to provide information on the status of a grievance is not indicative of arbitrary behavior in the processing of the grievance itself. . . . [and that] [l]ack of communication, without more, is insufficient to evidence arbitrary or capricious processing of a claim" (quoting *Tracy v. Loc. 255, Int'l Union of Electronic, Elec., Tech., Salaried & Mach. Workers*, 783 F. Supp. 1527, 1531 (D. Mass. 1992)).

There is also no evidence that Local 804 acted in bad faith, i.e., that it acted with "an improper intent, purpose, or motive." *Vaughn*, 604 F.3d at 709–10 (recognizing that bad faith requires proof that the union acted with "an improper intent, purpose, or motive" (quoting *Spellacy*, 156 F.3d at 126)); *see also Bejjani*, 2013 WL 3237845, at *11 (noting that a "series of cancelled meetings and missed phone calls" do not satisfy the bad faith standard); *Aparicio v. Potter*, 136 F. App'x 14, 15 (9th Cir. 2005) (affirming district court's grant of summary judgment where postal worker's allegation that his union representative ignored phone calls and caused delays in the proceedings did not constitute a claim for bad faith.).

Plaintiff's conclusory allegations that "Local 804 intentionally and with malice and bad intent arbitrarily refused to proceed with [his] grievance," (Pl.'s Mot. ¶ 20), is insufficient to defeat Defendants' summary judgment motions.  Plaintiff argues that Local 804's bad intent can be inferred from its failure to (1) schedule a meeting with the grievance panel and settle his grievance in August of 2014, (Pl.'s Mot. ¶ 20); (2) return his calls to update him on the status of his grievance, (*id*. ¶ 21); (3) investigate which UPS supervisor mailed him the five-day letters or the person responsible for his discharge, (*id*. ¶¶ 22–23); and (4) record the settlement and withdrawal of his grievance on the same types of documents utilized in the proceedings of other

16

employees, (*id*. ¶¶ 21, 24–25).[8]  Plaintiff asserts that this evidence indicates that Cerulli and Daly

knew that his driver's license was suspended and that he would be unable to enter into the

agreement.  (*Id.* ¶ 25.)   Plaintiff bases his first contention — that Local 804 failed to meet with

the grievance panel — on a general letter from the grievance panel's co-chairs to union members

indicating that the Local 804-UPS Grievance Panel would be holding a hearing session in late

August of 2014.  (*See* Panel Meeting Letter dated Aug. 16, 2014, annexed to Pl.'s Mot. as Ex. F,

Docket Entry No. 219.)  However, there is no evidence that Local 804 was scheduled to meet

with the panel concerning Plaintiff's grievance on that day or that it declined to do so.  *Bennett v.*

*James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding 'the deference to which a

*pro se* litigant is entitled, as well as the deference accorded to a non-movant on a summary

judgment motion,' [the non-movant] 'must produce specific facts to rebut the movant's showing

and to establish that there are material issues of fact requiring a trial.'" (quoting *Almanzar v.*

*Newland*, 2010 WL 1379739, at *6 (S.D.N.Y. Mar. 26, 2010))).  (*See generally* Pl.'s Mot.)  As to

Plaintiff's claim that Local 804 failed to return his calls, the Court cannot infer that Local 804's

failure to return Plaintiff's calls demonstrates an improper intent.  Prior to settling Plaintiff's

grievance, Cerulli was in contact with Plaintiff and advised him that accepting the offer was in

his best interest.  *See Guerrero*, 2016 WL 631296, at *4 ("As long as the union acts in good

faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally

---

[8]  Plaintiff argues that "[if] Defendants . . . had properly settled [his] grievance, they
would have written an 'Official Agreement' spelling out the terms of the agreement and that
agreement would have been signed and dated by [Plaintiff], . . . Local 804, . . . Cerulli, . . . and
[Daly] like they did in the case of another employee who was discharged and pending
arbitration."  (Pl.'s Mot. ¶ 25.)  Local 804 contends that it has discretion to settle grievances in a
number of ways in order "to move efficiently through an enormous amount of grievances."
(Local 804 Opp'n 9.)

founded decisions which operate to their particular disadvantage." (quoting *Barr*, 868 F.2d at 43–44.)); *see also Caputo*, 730 F. Supp. at 1230.  (Local 804 56.1 ¶ 37)

Similarly, Plaintiff's claim that Local 804 failed to investigate particular areas of his grievance has no merit.  Plaintiff cites to the deposition testimony of Matt Hoffman, UPS's district labor relations manager, who testified that he does not know who drafted the five-day letters or the discharge notice,  (*see* Pl.'s Mot. ¶ 23 (citing Hoffman Dep. 10:14–25, 11:1–8, annexed to Pl.'s Motion as Ex. Q, Docket Entry No. 219), and to a sample "investigative form" letter,[9] (*see* "Investigative Form" Letter, annexed to Pl.'s Motion as Ex. G3, Docket Entry No. 219).  Hoffman testified that he did not recall who *drafted* the five-day letters or the notice of discharge, but that Plaintiff's immediate manager or supervisor requested the discharge notice after Plaintiff failed to respond to the five-day letters and that his secretary was authorized to sign his name on his behalf and to initial next to his signature.  (Hoffman Dep. 14:18–15:3, 20:14–19, annexed to UPS Opp'n at Ex. DD, Docket Entry No. 224-7.)  Thus, there is no evidence to support Plaintiff's assertion that Local 804 failed to investigate "to try and find out which UPS supervisor was responsible for [mailing Plaintiff the five-day letters]" or "to identi[f]y . . . the person(s) responsible for [Plaintiff's] discharge.[10]  *See Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 503 n.1 (S.D.N.Y. 2015) (declining to consider *pro se* plaintiff's factual assertions in his opposition papers that "d[id] not contain citations to the record, or [we]re not

---

[9]  The "investigative form" letter that Plaintiff includes as an exhibit is not addressed to anyone and contains generic form information stating that "[t]he union has thoroughly investigated the circumstances of [the employee's] discharge from UPS."  (*See* "Investigative Form" Letter, annexed to Pl.'s Motion as Ex. G3, Docket Entry No. 219).

[10]  Moreover, Plaintiff fails to explain how failing to identify who at UPS may have sent the five-day letters or the notice of discharge is material to Local 804's alleged failure of its duty of fair representation.

supported by citations in the record); *Bennett*, 737 F. Supp. 2d at 226 ("Notwithstanding the deference to which a *pro se* litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial." (internal quotations omitted)).  (Pl.'s Mot. ¶ 22.)

Plaintiff's argument that Local 804 failed to properly memorialize the settlement and withdrawal of his grievance also fails to demonstrate bad faith.  Plaintiff cites to an agreement between UPS and another employee as a sample that includes the employees' signature and the members of the committee who decided the proceeding.  (*See* Pl.'s Mot. ¶ 25 (citing Joint Submissions Panel Decision Sheet of Reginald Naughton and Joint Submissions Panel Decision Sheet of Jahmil Barrett, annexed to Pl.'s Mot. as Ex. H, Docket Entry No. 219.)  However, the comparative agreement Plaintiff relies on was not related to a settlement, but rather a grievance proceeding.  (*See id*.)  Moreover, Plaintiff does not point to any procedures requiring settlement agreements to "spell[] out the terms of the agreement" and be signed by all relevant parties.  (*See generally* Pl.'s Mot.)  In addition, Cerulli testified that it was "common" for a union and company to memorialize the withdrawal of a grievance by submitting a joint submission form to the administrators of the panel arbitration system and that about half of all grievances settled are settled based on verbal agreements.  (Cerulli Decl. dated Mar. 11, 2021 ¶¶ 15–16, annexed to Local 804 Resp. to Pl.'s 56.1 ("Local 804's Counter 56.1"), Docket Entry No. 228-1.)  Further, the fact that Cerulli and Daly reached the particular settlement agreement which required Plaintiff to have a valid driver's license does not demonstrate bad faith.  Daly testified that he did not learn about Plaintiff's licensing issue until after the meeting in which he and Cerulli agreed to settle the grievance.  (Daly Dep. ¶¶ 32:11–33:17, annexed to Local 804 Mot. as Ex. 15,

Docket Entry No. 207-3.)  Indeed, Plaintiff concedes that he informed Cerulli that his driver's license was suspended *after* Cerulli informed him of the settlement offer.  (Pl.'s Opp'n Aff. ¶ 12.)  Moreover, after Daly learned that Plaintiff had problems with his license, he delayed the implementation of the settlement agreement until Plaintiff resolved the issues, but Plaintiff never returned to work.  (Daly Dep. 37:15–19; UPS 56.1 ¶¶ 30–31.)  Without record evidence to support Plaintiff's assertions, the Court cannot view them as more than conclusory claims that are insufficient to defeat Defendants' motions for summary judgment.  *See Johnson v. Fischer*, No. 12-CV-210, 2015 WL 670429, at *18 (N.D.N.Y. Feb. 17, 2015) ("Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere 'metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986))); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) ("[P]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." (quoting *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002))); *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) ("[A] *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see, e.g.*, *Smith v. New Venture Gear, Inc.*, 319 F. App'x 52, 58 (2d Cir. 2009) (ruling that the plaintiff's "conclusory claim that the [u]nion did not 'adequately deal [with] his claim'" raised no issue of fact "with respect to whether the [u]nion performed its duties adequately"); *McGovern v. Loc. 456, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 107 F. Supp. 2d 311, 320 (S.D.N.Y. 2000) ("Conclusory and

20

vague allegations are too speculative to support a claim for breach of the duty of fair representation.").

Accordingly, the Court grants Defendants' motions for summary judgment as to Plaintiff's duty of fair representation claim.

### ii.    Hybrid § 301/breach of duty of fair representation claim against UPS

Because Plaintiff fails to allege that Local 804 breached its duty of fair representation, a necessary element of a hybrid claim, the Court also grants UPS's motion for summary judgment.

An "employee may sue the employer, the union, or both in a hybrid § 301/fair representation claim; to prevail the employee 'must not only show that [his] discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the [u]nion.'" *Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983)); *see also Smith v. Brookhaven Sci. Assocs., LLC*, 473 F. Supp. 3d 159, 166 (E.D.N.Y. 2020) ("[I]f a union member fails to establish a breach of the [duty of fair representation] by the union, then the court need not address the employer's breach of the CBA." (citing *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 183 & n.13 (2d Cir. 2001))), *aff'd*, 848 F. App'x 57 (2d Cir. 2021); *Black v. Anheuser-Busch In Bev*, 220 F. Supp. 3d 443, 449 (S.D.N.Y. 2016) ("An employee's claim against his employer for breach of a collective bargaining agreement can therefore proceed only if the employee's union violated its duty of fair representation." (citations and internal quotation marks omitted)); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005) ("It is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer only if 'the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the

employee's grievance.'" (quoting *Vaca*, 386 U.S. at 186)).

Plaintiff does not have a viable duty of fair representation claim.  Accordingly, the Court grants UPS's motion for summary judgment as to Plaintiff's hybrid claim.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motions for summary judgment and denies Plaintiff's motion for summary judgment as to its hybrid § 301/breach of duty of fair representation claim.

Dated:  March 31, 2022
        Brooklyn, New York

SO ORDERED:


    ___s/ MKB_____
MARGO K. BRODIE
United States District Judge
